JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN O'TOOLE, ROBERT SOKOLOVE, and MICHAEL BITTON, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GENCOR NUTRIENTS, INC.; et al.,<br><br>　　　　　Defendants. | CASE NO. CV 14-3754-R<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT |

　　　Before the Court are two Motions to Dismiss. (Dkt. No. 75, 77). Defendants Direct Digital, LLC, Force Factor, LLC, GNC Corporation, General Nutrition Centers Inc., General Nutrition Corporation, and S&G Properties, LLC jointly filed a Motion to Dismiss the First Amended Complaint. (Dkt. No. 75). Defendants GE Nutrients, Inc. and Gencor Nutrients, Inc. also filed a Motion to Dismiss the First Amended Complaint. (Dkt. No. 77). Having been thoroughly briefed by all parties, this Court took the matters under submission on June 28, 2017.

　　　Defendants manufacture and sell nutritional supplements containing Testofen which is claimed to increase free testosterone levels and provide health benefits to men. Each of the named Plaintiffs purchased a Testofen product, such as Nugenix, Troxyphen, or Test X180. O'Toole purchased a bottle of Nugenix at an unspecified time in an unspecified GNC retail location in Los Angeles County, California. Sokolove purchased a bottle of Troxyphen at an unspecified time in

an unspecified GNC retail location in Westchester County, New York. Plaintiff Bitton purchased a bottle of Test X180 from an unspecified retailer, presumably online, at an unspecified time. Plaintiffs allegedly relied on statements found on the product's packaging, in radio or television advertisement, and on promotions in retail locations. Plaintiffs argue that the claims made by Defendants regarding the Testofen products are false and unsupported by clinical trials.

Plaintiffs' retained an expert to review data presented by Defendants in support of their Testofen products. Plaintiffs' expert concluded that when proper statistical and scientific analysis of Defendants' studies is conducted, the claims made in support of Testofen are false. Plaintiffs' expert reviewed data provided by Gencor including "an unpublished manuscript concerning the Testofen Study entitled 'Beneficial effects of fenugreek glucosides supplementation in weight resistance trained male subjects'" (the "Manuscript") and individual data points in a spreadsheet for 60 subjects enrolled in the Testofen Study (the "Study Data"). (FAC ¶58). Additionally, Plaintiffs' expert reviewed a 2006 report based on an exploratory study of the efficacy and safety of Testofen as well as a 2008 report which analyzed the clinical data points of the Testofen Study. (FAC ¶¶ 59, 64). Plaintiffs' expert takes issue with the design of the 2006 and 2008 report as well as their analyses of variables. For example, the 2006 Report claims that a primary variable of the Testofen Study was the effect of Testofen on testosterone levels when that was not a primary variable of the study. (FAC ¶60). The 2008 Report makes a similar claim. The FAC alleges that Defendants' manipulation of variables in their studies of the Testofen products "constitutes scientific fraud of the highest order, and is compelling evidence of [an] intent to defraud." (FAC ¶84).

The FAC identifies twenty-two Testofen-based products which allegedly contain misleading claims and are falsely advertised. The FAC includes examples of claims made on both the packaging of these products and in advertisements for the products. By way of example, the FAC alleges that a Nugenix bottle contains the claim that it is "an all natural Testosterone booster that contains clinically studied ingredients that are proven to boost free testosterone levels." (FAC ¶109). Nugenix's website boasts that it will "boost your testosterone now." (FAC ¶ 111). Troxyphen's packaging contains similar claims and radio advertisements claim that "Troxypgen

2

raises testosterone . . . ." (FAC ¶114).  Similar claims are found on each of the remaining twenty products' packaging and advertisements.  The FAC also alleges that similar claims are made in Defendant GNC's retail locations.

Plaintiffs allege that GNC not only sells the allegedly infringing products, but also promotes them.  The FAC alleges that GNC retail locations place Nugenix, Troxyphen, and other Testofen products in "Newest Latest Greatest" and "Hot New Products" high-visibility sections of the stores.  There are also floor displays and shelf displays advertising Nugenix alongside the GNC logo.  GNC allegedly mails and emails customers promoting Testofen products including Nugenix and Troxyphen.  Notably, GNC offers "watered-down" claims regarding Testofen products or includes disclaimers that GNC has not independently confirmed the results advertised by the Testofen products.  Plaintiffs allege that these differences in advertising claims is "conclusive evidence that GNC is fully aware that Testofen has *not* been clinically proven to increase free testosterone levels." (FAC ¶ 224).

Based on these allegation, the FAC states nine causes of action: (1) violation of the Consumer Legal Remedies Act (the "CLRA") (Cal. Civ. Code §§ 1770(a)(5), 1770(a)(2), 1770(a)(7)); (2) violation of California Business and Professions Code Section 17200; (3) violation of the False Advertising Law, Cal. Bus. and Prof. Code Section 17500, *et seq.*; (4) breach of express warranty; (5) breach of implied warranty of merchantability; (6) breach of the implied warranty of fitness for a particular purpose; (7) negligent misrepresentation; (8) violation of New York General Business Law ("GBL") Section 349; and (9) violation of GBL Section 350. Both groups of Defendants move to dismiss the FAC in its entirety because the FAC sounds in fraud and fails to allege sufficient details to support fraud-based claims.  For the reasons discussed below, the Motions are granted.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper when a complaint exhibits either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  Under the heightened pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a plaintiff must allege "enough facts

to state a claim to relief that is plausible on its face," so that the defendant receives "fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570.  The plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678.  Courts will not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ." *Id*. "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

Allegations of fraud and allegations that "sound in fraud" must be plead with particularity. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy*, 317 F.3d 1097, 1103-05 (9th Cir. 2003).  Pleadings are sufficiently particular under Rule 9(b) when they are "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106.  Plaintiffs must plead the who, what, when, where, why, and how of their claims sounding in fraud. *Id*.  Courts in California routinely apply Rule 9(b)'s pleading requirements to marketing and label fraud claims, and Plaintiffs do not dispute that they are relevant to this case.

Here, the "who", "what", and "how" are not in dispute.  The "who" is the Defendants, the "what" is the allegedly misleading claims regarding testosterone boosting, and the "how" is Plaintiffs' claims regarding the statistical significance and study designs. *See In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *17 (C.D. Cal. Sept. 4, 2014) (Courts apply "a relatively straightforward test for the application of Rule 9(b) to label-based fraud claims.  The "who" are the defendants; the "what" are their allegedly misleading claims; the "when" is the proposed class period, during which those claims were made; the "where" is the offending label; and the "how" is the plaintiff's explanation why the defendant's claims are misleading.").  However, the "when" and the "where" is not plead with particularity.  The FAC does not allege a proposed class period nor does it contain dates of the Plaintiffs' purchases.  In its Opposition, Plaintiffs contend that their claims are constructively limited by the date on which the infringing products were first sold until the time the initial complaint was filed in 2014.  This

4

1 argument fails for two reasons.  First, it is not clear that FAC does restrict the purchases to these
2 time periods.  Plaintiffs' argument as to when the purchases were made is based on their
3 *interpretation* of various allegations in the FAC.  The FAC references press releases announcing
4 the sale of Nugenix at GNCs which Plaintiffs argue in their Opposition is proof of the first date
5 Nugenix was sold.  However, the only thing the allegations cited by Plaintiffs for this proposition
6 show is the date on which certain press releases were made.  More importantly, Plaintiffs may not
7 supplement their FAC with constructive interpretation of facts in an Opposition.  See e.g. *Car*
8 *Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the
9 complaint may not be amended by the briefs in opposition to a motion to dismiss.").  Secondly,
10 even if the FAC did limit the claims sounding in fraud to the time between 2012 and 2014, that
11 would only apply to sales of two of the twenty-two products at issue in this litigation.  Plaintiffs
12 make no mention of the possible time period in which products other than Nugenix and Troxyphen
13 were purchased.  Accordingly, Plaintiffs' claims fail to plead facts with particularity which would
14 give Defendants notice as to when the alleged fraud occurred.

15 The FAC also fails to sufficiently allege facts indicating where the infringing products
16 were sold.  Plaintiffs' theory of liability as it relates to GNC rests in part on the physical
17 arrangements and advertisements in GNC retail locations.  Plaintiffs also intend to bring claims
18 based on internet sales of Testofen products.  However, the FAC does not allege with particularity
19 the location where these products were purchased.  This case differs from typical label-based fraud
20 claims in which the "where" is simply the offending label because this case relies on the marketing
21 and advertising of Testofen products at retail locations.  (*See e.g.* FAC ¶¶ 190-93).  Without
22 particular facts alleging where these fraudulent and misleading retail arrangements and
23 advertisements were found, Defendants are unable to defend against Plaintiffs charges.

24 Each of the causes of action is premised on the same foundational theory that Testofen
25 does not produce the results that Defendants claim it produces.  Plaintiffs arrive at this claim based
26 on statistical and scientific criticism of the data and studies provided by Defendants.  Though the
27 FAC no longer contains an explicit cause of action for fraud, each of the remaining causes of
28 action sounds in fraud.  Accordingly, because the FAC fails to meet the pleading standard of Rule

1  9(b), the FAC fails in its entirety.

2  **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss the First Amended

3  Complaint (Dkt. No. 75, 77) are GRANTED.

4

5  Dated: August 17, 2017.

6

7  _____

8  MANUEL L. REAL
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28